## DEHORTY'S LESSEE v. JONES et al.

High Court of Errors and Appeals.   June, 1818.

*Clayton's Notebook, 62.*\*

---

\* This case is also reported in *Ridgely's Notebook II, 142.*

*Hall* and *Ridgely,* for plaintiff. The condition is good. The son did become indebted in a greater sum than £30, and therefore we are entitled to recover. At all events, the judgment and opinion of the High Court of Errors and Appeals is conclusive as to the question in this cause.

*Clayton* and *Rodney, contra.*

JOHNS, C. J. The question of law in this case is so plain that there can be no rational doubt respecting it. We are decidedly of opinion that this condition is void. The decisions of the High Court of Errors and Appeals are certainly binding on us, but when this case was argued Chancellor Ridgely, Chief Justice Booth, and Justices Way and Warner were the only members of the Court; there was a bare majority, and Chief Justice Booth, and Justice Warner, have since changed their opinions and think the condition void.

Verdict for defendants again. Bill of exceptions again.

————

In High Court of Errors and Appeals, June Term, 1818. The case of *Dehorty's Lessee v. Jones et al.* came on upon a writ of error from Supreme Court.

Copy of so much of the will of John Dehorty as came in question:

> "I give and bequeath unto my son John Dehorty, after the death of my wife or her marriage, all the remainder of my lands to him and his heirs forever; but in case my son should involve himself in debt at any time to the amount of £30 current money or should offer any part of said land for sale, then I give my land unto my two daughters, Mary Dehorty and Peggy Travers, to be equally divided between them, to them and their heirs."

John Dehorty, in his lifetime, executed a bond for a sum above £30. It was not, however, shown that he owed at any time a sum greater than he was able to pay out of his personal estate; indeed the contrary appeared to be the fact, for at the time of his death, shortly after the execution of the bond, his personal estate amounted to $1,579.97, and his debts (funeral expenses and all) were only $1,018.22, leaving a clear balance of $561.75, as appeared from the administration account on his estate.

The lessor of the plaintiff claimed under M. Dehorty and P. Travers, and defendants under John Dehorty, the son. The cause was now argued by *Hall* for the lessor of plaintiff and *Clayton* for the defendant. The two questions moved were whether the condition was valid and whether there was any breach of it.

*Hall.* The second branch of the condition restraining the right of alienation, we admit, is repugnant. But the first is valid. It is a first principle of the law that he who has a right to property has the right to dispose of it—whether by grant or devise, as he may deem proper—particularly in cases of devises, which are purely gratuitous. Now is this case an exception to the general rule? As we can find no condition in the books like the present, we must argue from analogy. In *Thellusson v. Woodford*, 4 Ves.Jr. 318, there is a very strong instance of a successful attempt at fettering an estate. ([Note.] This must be the case of the "trust of accumulation," 4 Cru.Dig. No, but see that too.) The testator, who was immensely wealthy, by his will so limited his estate that his heirs were not to receive any part of the profits until after the death of all his children and grandchildren in issue and *in ventre sa mere* at the time of the testator's decease, until which time the estate was to accumulate in the hands of trustees. It was calculated that the estate would by that time accumulate to seventy millions, yet it was held good.

An estate to a man and his heirs, tenants of Dale, is valid condition. 2 Bl.Comm. 154. So, "as long as he continues unmarried" is a good condition, 2 Bl.Comm. 155. (Query [by Clayton].) So, "that devisee take the name, use the coat of arms, and reside in the manor house of the devisor," 2 Wood.Lect. 141, 142. So, that devisee shall not marry a Scotsman or anyone of Scotch parentage. *Perrin v. Lyon*, 9 East 170. So, to *A* in fee, but if he dies without lawful issue living at his death, he shall not have power to devise except to his sisters, 6 East 172. Generally the grant of an estate implies the right to dispose of it; but, short of a perpetuity, the parties may restrain the exercise of that right according to their pleasure, 8 Term 61.

Conditions may affect the power of the grantee or devisee over the thing granted or devised, [or] the power of the grantee or devisee over collateral matters. And it is a sound distinction that the same condition is often void in the former case and valid in the latter. Thus, if *A* enfeoffs *B* of Whiteacre upon condition that he shall not alien it, the condition is clearly void. Yet if *B* be seised of Whiteacre, and *A* enfeoffs him of Blackacre upon condition that he shall not alien Whiteacre, the condition is good, because it regards collateral matter. Co.Litt. 223a. And so all other conditions, which, if annexed to the land granted or devised are void merely on account of their repugnancy to the estate passed, are good if the act to be done or not done, and upon which the estate granted or devised is limited over, is to operate upon other lands or other things, *ibid.* All repugnant conditions to be found in the books are conditions which limit the power of the devisee or grantee over the estate granted or devised: as, that grantee shall not take the profits, Co.Litt. 206b; that tenant in fee shall not alien, Co.Litt. 206a, 223b; and other like conditions, *ibid.* and Bac.Abr. 410, Com.Dig. title "Condition" D 4, 5. (Query.)

In the principal case, the condition is that the devisee shall not involve himself in debt at any one time [to] £30, which is a collateral right; and therefore the condition is not repugnant to the nature of the estate devised. Nor is this condition an impossible one. An impossible subsequent condition is void, and the estate is absolute. But an improbable condition is good, and the estate void: as, that a married man shall marry such a woman, which is improbable, but not impossible, for perchance his wife may die before himself, 1 Roll.Abr. 419, line 45; that the Pope shall be in London within a day, 1 Roll.Abr. 420, line 2; that it shall rain tomorrow, which may happen, though it be out of human power to cause it; and so of other conditions, Com.Dig. title "Condition" D 1, 2, Co.Litt. 206a, n. 1. And there was no absolute and uncontrollable necessity that John Dehorty, the son, should have become involved in debt at any one time [to] £30. Nor is the condition illegal. All conditions against law are reducible to one of these three heads: (1) either to do *malum in se* or *malum prohibitum;* (2) to omit a duty; (3) to encourage such crimes and omissions. 1 P.Wms. 189, Co.Litt. 206b, n. 1, 2 Bl.Comm. 157, Com.Dig. title "Condition" D 3. Does the not becoming involved in debt fall under any of these?

It was objected at the trial below that it was against the policy of the law that a man's land should not be subject to the payment of his debts. But this is only while the tenant himself remains in the perception of the profits. But we contend that

this is no longer the property of John Dehorty, the former tenant, after the breach of the condition. You cannot give a man an estate for the benefit of his creditors, nor the charge [in] the nature of one. Estates tail are valid, yet cannot be sold for debts. You cannot charge it. If it be urged that the devisee would have no interest in keeping the condition after his lands should be sold, the answer is that the same objection applies to grants on condition of taking a particular name, using a coat of arms, living in a particular house, or not marrying a Scotsman, which are good conditions. 1 Fearne Rem. 384 relates to direct conditions and does not apply here.

Ambler 379, 380 was cited below and much relied on by the Court. The point there decided was that a condition that tenant in tail should not suffer a recovery was void. Now a recovery is inseparable from an estate tail, and as the condition acted on the thing granted it was void. It is not one of the incidents of an estate in fee that the tenant be at liberty to contract debts. It is merely inconvenient.

A personal annuity was devised to one on condition that he should not become a bankrupt, and the condition was held good, 6 Term 684—*a fortiori* in case of real estate. The act of bankruptcy too implies a deficiency for the creditors, and the determination of the annuity there diminishes the dividend for the creditors. That case is stronger than this other.

Second point. With regard to the word "involve" there cannot be the least doubt. The expression "at any one time" shows it clearly relates to the simple act of incurring a debt of £30 without reference to devisee's ability to pay it, independent of the land.

CHANCELLOR RIDGELY adverted to the case *Hunter v. Galliers*, 2 Term 133, where a proviso in a lease for twenty-one years that the landlord should re-enter on the tenant's committing any act [of] bankruptcy was held good.

*Clayton*. This is not the case of an annuity or a term for years, both of which are subject to different rules. A termor for life or years may be restrained from aliening, which a tenant in fee cannot be. Co.Litt. 223b, n. 1. The owner of land is not at liberty to dispose of it as he sees fit, but subject to the rules of the law.

This is a case of the first impression. No cases in point are to be found in the English books, and if they could be found and should support the condition, yet they would not apply to this country, for lands are here in a very different situation from what

they are in England. It is the policy and object of the laws, and in fact, one of the incidents of land in this country, that it shall be liable for the debts of the tenant or owner, and it is the duty of the courts to resist any attempt to prevent that liability from attaching. This is a direct attempt of that kind, for the amount of the restriction is entirely immaterial—if it be good for £30, it would be good for one cent, and the laws would become a dead letter.

Inconveniences would encompass the tenant himself. He could not hire laborers for the cultivation of his land, nor stock his farm, nor improve it, without endangering his title. Everything the most trifling, everything wanted, whatever be the urgency of the case, must be paid for in advance. If the tenant is attacked by a sudden disease, the messenger for medical aid must bear the precise fee in his hand. Is not such a condition impossible? No act or precaution can preserve a man through the whole course of his life entirely exempt from debts.

This condition is, in this state, a restraint upon alienation, for in this state one mode of alienation is by sheriff's sale, which the condition, if good, would effectually prevent. If this condition be good as to the devisee, it would be good as to the heirs *ad infinitum* of a devisee, and thus introduce perpetuities, which the law abhors. It is similar to the condition that the tenant shall not receive the profits, which is clearly void. Co.Litt. 206 b. So, a bond by tenant in fee not to commit waste is void, though the bond be a distinct act from the deed of grant and so collateral to the grant. (Query.) So of a grant upon the collateral condition not to marry. Hence there is no distinction between collateral and direct conditions. Amb. 379, case of the condition not to suffer a common recovery, was collateral also. In *Davidson v. Foley,* 2 Bro.C.C. 203, an attempt had been made so to frame an annuity as to exclude all of the annuitant's creditors except such as were mentioned in a schedule, and the Court decreed in favor of the creditors attempted to be excluded. It is a sufficient objection to this condition that it is an innovation upon the principles of common law, Co.Litt. 379b.

But if the condition were good, yet there has been no breach, for the word "involve" necessarily implies an inability to pay, which never existed on the part of John Dehorty, the devisee. He left a clear personal estate of $561.75 after the payment of all debts and funeral expenses.

*Hall* in reply. Co.Litt. 379b means that new inventions to get rid of the principles of the common law ought to be discounte-

nanced; but to reject a novelty which contravenes no rule of law would be to bar the doors of justice against more than half the cases that occur, which all involve some new circumstances.

A great principle is that tenant in fee may dispose of it as he pleases. 2 Bro.C.C. 203 was to protect annuitants against their creditors, but here the creditors have no remedy against the land because the devisee has none. It does not remain in his hands to their injury.

The case in Ambler was clearly a direct condition. There is a great difference between the liability of lands for debts and the power to incur debts. I doubt whether a condition against marriage annexed to land be generally void. It is true that legacies on such a condition are absolute. (Query, not always.) But that proceeds upon the rule of the Civil Law introduced by Augustus on finding, by a census of his subjects, a great proportion unmarried.

General restraints upon trade are decided to be void because it is the duty of everyone having a trade to exercise it for general benefit, and because it is the interest of the state that competition should exist. Is it the duty of a man to run in debt? Is it the interest of the state? And particular restrictions of a trade are not void. This is but a particular restriction against debts under £30.

This can never be a perpetuity, as John Dehorty's heirs would after his death have had an absolute estate had he not broken the condition. It would be more convenient for tenant in tail, for life, and years to have a fee, that however would be no argument in a court of justice for extending their interests to a fee.

CHANCELLOR RIDGELY. (Present: BOOTH, C. J. C. P.,[2] and JUSTICES WARNER, COOPER and PAYNTER.) This cause has been extremely well argued. Everything has been said that could throw any light upon the subject, and we are unanimously of opinion as we were when this cause was in this Court before, that the condition is good and that there has been a breach of it. It is however due to the Supreme Court to state that two of the members of this Court have subsequently to the first reversal of the judgment of that Court entertained some doubts on the question. Those doubts have been removed by this argument.

It is true the estate if sold would have been fettered—but that takes place on the alienation of all estates in condition or base fee.

2 Manuscript reads "C. J. C. C."

It is no perpetuity. We think the word "involve" means here incurring debts to the amount of £30 without reference to the devisee's ability to pay independent of the land.

That part of the condition prohibiting the alienation of the land is void.

We think the whole case clear beyond any controversy. We have tested it by every legal principle that can have any bearing.

Judgment below reversed and cause remanded for new trial.

---

Same case. Supreme Court. Kent. October Term; 1818.

The cause was again argued nearly as before.

Present: CHIEF JUSTICE JOHNS, [JUSTICES] DAVIS and PAYNTER.

JOHNS, C. J. We have no doubt about this question, but the High Court of Errors and Appeals have decided against our opinion.

And in conformity with that, he told the jury they must (as they then accordingly did) find for plaintiff.

*Hall* and *Ridgely* for plaintiff. *Clayton* and *Brinckle* for defendants.